# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

GOLDEN K. BERRY                          CASE NO. 3:18-CV-01397

VS.                                      JUDGE TERRY A. DOUGHTY

JAY RUSSELL, ET AL.                      MAG. JUDGE KAREN L. HAYES


## RULING

Pending before the Court are two motions for summary judgment, to-wit, the Motion for Summary Judgment [Doc. No. 47] filed by Plaintiff Golden Berry ("Berry") seeking judgment in his favor only with regard to his retaliation claim; and, the Motion for Summary Judgment [Doc. No. 51] filed by Defendants Sheriff Jay Russell ("Sheriff Russell"), Chief Deputy Marc Mashaw ("Chief Mashaw"), Colonel James Purvis ("Colonel Purvis"),and Deputy Scott Smith ("Smith), (collectively "Defendants"), seeking summary judgment denying all of Berry's claims.

For the following reasons, Berry's motion [Doc. No. 47] is DENIED and Defendants' motion [Doc. No. 51] is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant Sheriff Russell is the Sheriff of Ouachita Parish.  Defendant Chief Mashaw is the second in command.  Defendant Colonel Purvis is the third in command.  Defendant Smith was the Supervisor of the Work Release Program in 2017.[1]

Berry, an African American, was hired as a Deputy with the Ouachita Parish Sheriff's Office ("OPSO") on October 17, 2000.  He was assigned as a correctional officer at the Ouachita

---

[1] Although Berry names the Ouachita Parish Sheriff's Office ("OPSO") as a Defendant, the Court notes that in Louisiana, Parish Sheriff's Offices are not legal entities capable of suing or being sued. *Ruggiero v.. Litchfield,* 700 F. Supp. 863, 865 (M.D.La.1988). The OPSO is not a proper defendant under Fed. R .Civ. P. 17.

Parish Correctional Center ("Correctional Center"). On February 28, 2003, Berry was promoted to the rank of Corporal.

Berry continued to work at the Correctional Center as a Corporal until the summer of 2017, when he told Smith he was interested in obtaining a guard position at the Work Release Center. [Berry Deposition, Doc. No. 51-3, p. 9]. His position at the Correctional Center required Berry to alternate working the night shift and the day shift. Berry wanted to transfer to a guard position at the Work Release Center as it would allow him to remain on the day shift permanently. [*Id.*, p. 12].

The OPSO has a set number of positions and a set number of ranks. [Purvis Deposition, Doc. No. 51-7, p. 16]. When a position at the Work Release Center came open, Berry applied for the position, even though he was aware that the position was slotted for someone with the rank of Deputy, and would, therefore, require a demotion in rank from Corporal to Deputy. [Berry Deposition, Doc. No. 51-3, p. 10]. Berry states that he thought he could keep his rate of pay in view of his years of service. [Doc. No. 51-3, p. 9, 10]. Berry additionally asserts that Smith assured him that his pay would not decrease if he transferred to the Work Release Center [Id.]. Smith, on the other hand, denies telling Berry his pay would not decrease. [Smith Deposition, Doc. No. 51-5, p. 17]. In any event, it is undisputed that, after Berry was granted the transfer to the new position, Berry's pay was decreased. [Doc. No. 51-3, p. 12],

Berry contends that several white employees with similar or less experience were allowed to transfer and keep their rank and rate of pay or were promoted and given a pay increase, whereas he was demoted and suffered a pay decrease.

Defendants, on the other hand, contend Berry was informed that the open position was slotted and budgeted for someone with the rank of Deputy, which pays less than a Corporal

position, and that Berry nevertheless voluntarily accepted the demotion in rank and was granted the requested transfer.

On November 24, 2017, Berry filed a charge of discrimination based on race with the U.S. Equal Employment Opportunity Commission (EEOC). On March 13, 2018, Berry filed an EEOC corrections statement. On July 30, 2018, Berry received his Right to Sue Notice for the discrimination charge.

In early January or February of 2018, Berry qualified to run for the political office of Councilman in the Town of Winnsboro, and he was elected on March 24, 2018. Berry contends that, on March 28, 2018, Defendant Purvis and Captain Boney of the OPSO met with Berry and advised him he could not work for OPSO and hold an elected public office, and that he was being terminated immediately. Berry contends that he was not to be sworn in until June 27, 2018, and that several white OPSO employees were not only allowed to campaign for public office but they were also allowed to remain employees until they were actually sworn in. He asserts that he was retaliated against because he had filed the earlier complaint with the EEOC alleging race discrimination.

Defendants contend Berry was terminated for violating provisions of the Ouachita Parish Sheriff's Office Manual of Rules by running for elective office without notifying his superiors he was running.

On May 2, 2018 Berry filed a charge of retaliation with the EEOC. On June 27, 2018, and on August 6, 2018, Berry filed supplemental charges of retaliation and wrongful termination against OPSO. On September 24, 2018, Berry received his Right to Sue Notice for the retaliation charge.

On October 25, 2018, Berry filed this suit against Defendants, alleging claims of discrimination based on race, and, retaliation.

On February 21, 2020, Berry filed a motion for summary judgment in his favor only on his retaliation claim [Doc. No. 47]. Defendants filed an opposition on March 23, 2020 [Doc. No. 73]. Berry filed a reply to the opposition on March 27, 2020 [Doc. No. 78].

On February 26, 2020, Defendants filed a motion for summary judgment in their favor on both of Berry's claims [Doc. No. 51]. Berry filed an opposition on March 19, 2020 [Doc. No. 63].

The issues are ripe, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

B.    **Analysis**

1.    **Race Discrimination Claim**

Berry brings a claim for racial discrimination under Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from discriminating against employees on a number of grounds, including race. 42 U.S.C. § 2000. To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. Under *McDonnell Douglas*, the plaintiff carries the burden to prove that (1) he belongs to a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside his protected class or was

treated less favorably than other similarly situated employees outside his class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); s*ee also Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)*.

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer can show a legitimate, non-discriminatory reason for the adverse-employment action, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either that the proffered reason was a pretext for discrimination, or that the plaintiff's protected status was another motivating factor for the decision. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To overcome a legitimate, nondiscriminatory reason for termination, the plaintiff must show something beyond disagreement with the employer's decision. *Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation.").

### a.  Prima facie case of discrimination

Here, Berry does not argue that there is direct evidence of discrimination.  However, the inquiry does not end there. As stated above, if Berry cannot prove his case with direct evidence of discriminatory motive, he can still rely on indirect evidence.  *McDonnell Douglas*.

Defendants do not deny that Berry is a member of a protected group because he is African American, or that he was qualified for the position at issue. However, Defendants contend that Berry cannot survive the third or fourth prong of the analysis in that he cannot show (1) he suffered an adverse employment action or (2) he was replaced by someone outside his

protected class or was treated less favorably than other similarly situated employees outside his class.

### i.      Adverse employment action

Defendants argue that Berry voluntarily sought, applied for, and accepted a transfer from a Corporal position to the lower rank of Deputy, and that common-sense dictates that lower ranking positions have lower rates of pay. Berry responds that Defendant Smith assured him his pay would not decrease if he was transferred, yet it did decrease, and, therefore, there is a factual issue as to whether Berry suffered an adverse employment action.

The Court finds that Berry has met his minimal burden of showing he suffered an adverse employment action by having his pay decreased.  Defendants have not produced evidence he did not suffer a pay decrease, just that he agreed to a lower rank and, therefore, should have expected a pay decrease.

Having found that Berry suffered an adverse employment action, the Court will next consider Defendants' contention that Berry has failed to satisfy the fourth prong of the analysis.

### ii.      Disparate treatment

To satisfy this fourth prong of the *prima facie* case, a plaintiff must show (a) he was replaced by someone outside his protected class, or, (b) he was treated less favorably than other similarly situated employees outside his class, under nearly identical circumstances.  *McDonnell Douglas*.

Berry does not allege that he was replaced by someone outside his protected class. However, Berry could also satisfy his burden by showing he was treated less favorably than other similarly situated employees outside his class, under nearly identical circumstances.

To establish disparate treatment, a plaintiff must show the employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee*, 574 F.3d at 260. Berry alleges that several white employees were allowed to keep both their rank and their rate of pay when they transferred from corrections to the work release program; whereas he was not allowed to keep his rank, and he additionally suffered a decrease in pay.

Defendants respond that it was customary for any open position to specify the rank that the new position would have—whether Deputy, Corporal, etc. Berry voluntarily accepted a lower rank when he was granted the transfer he asked for. The open positions that the white employees applied for likewise specified the rank for the position. Berry has not shown that any white employee was given preferential treatment. Because Berry cannot satisfy the fourth prong of the initial analysis, Defendants assert that his claim should be dismissed with prejudice.

The Court finds that Berry has failed to satisfy this prong of the analysis because it is uncontested that he voluntarily sought, applied for, and accepted a transfer from a Corporal position to the lower rank of Deputy. Berry has not shown that he was treated less favorably than other similarly situated employees outside his class, under nearly identical circumstances.

However, assuming *arguendo* that Berry has established a *prima facie* case of race discrimination, the Court will next consider whether Defendants have produced a legitimate, nondiscriminatory reason for the adverse-employment action, and, if so, whether Berry has carried his burden of showing either that the proffered reason was a pretext for discrimination, or that Berry's protected status was another motivating factor for the decision.

### b. Legitimate, non-discriminatory reason, and pretext

The Court finds that Defendants have, at the very least, clearly articulated a legitimate, non-discriminatory reason for Berry's reduction in pay, that being that he voluntarily sought,

applied for, and accepted a transfer from a Corporal position to the lower rank of Deputy so that he would only be required to work day shifts. Therefore, any "inference of discrimination disappears." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Further, at this point, Berry bears the ultimate burden to show Defendants' reason for reducing his pay is pretext for race discrimination. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). To do so, Berry must "show something beyond disagreement with the employer's decision." *Wilson v. New Wendy's, Inc.,* No. 3:18-CV-01049, 2019 WL 6247823, at *4, 6 (W.D. La. 11/20/19) (*citing Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005)).

A plaintiff can establish pretext by either evidence of disparate treatment or by showing "the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). Employment discrimination laws were "not intended to be a vehicle for judicial second-guessing of employment decisions nor [are they] intended to transform the courts into personnel managers." *Moss v. BMC Software, Inc.,* 610 F.3d 917917, 926 (5th Cir. 2010).

"[T]the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000) (internal quotation and citation omitted).

Here, Berry argues that Defendants' articulated reason for his reduction in pay is pretext because Defendants intentionally engaged in a scheme of racial discrimination whereby (1) he was lured or enticed into accepting a job with a lower rank and lower pay, (2) while several white employees with similar or less experience were allowed to transfer and keep their rank and rate of pay, or were promoted and given a pay increase.

### i. Lured or enticed into accepting a job with a lower rank and lower pay.

As a means of showing pretext, Berry first argues that he was the victim of a plot by Defendants to lure or entice him into accepting a job at the Work Release Center with a lower rank and lower pay. Berry alleges that Smith assured him that his pay would not decrease if he transferred to the Work Release Center [Doc. No. 51-3, p. 9, 10]. Berry asserts "[I]t was a promise made by defendant to Plaintiff to entice him to transfer to TWRC." [Doc. No. 63, p. 4].

Smith, on the other hand, denies telling Berry his pay would not decrease. Smith testified:

A. … So, we had put out a letter which is what the department normally does when you have an open [sic]. It allows for people within the sheriff's department realm to move to that position.

[Doc. No. 51-5, p. 14]

. . .

Q. Did Mr. Berry relay to you that he did not want a decrease in pay?

A. Not that I can recall.

…

Q. Did you and Mr. Berry discuss during this conversation that his title would probably change?

A. Yes because he was entering a deputy position.

Q. But you don't remember the discussion or any discussion about whether the pay would increase or decrease?

A. I don't control that. No. No I wouldn't discuss that.

[*Id.*, p.14-15]

At the summary judgment stage, the Court may not make credibility determinations. *MAN Roland, Inc. v. Kreitz Motor Express, Inc.,* 438 F.3d 476, 478–79 (5th Cir.2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, (2000)).   However, even assuming *arguendo* that Smith did tell Berry his pay would not decrease, Berry has not shown that Smith made that statement in a scheme to entice or lure Berry into transferring to a job with a lower rank and lower rate of pay, or that the misstatement was racially motivated.   To the contrary, Bobby Charles Johnston ("Johnston"), Assistant Director of Ouachita Parish Work Release Program since 2012, stated in his deposition:

> A.    The only discussion that I remember having was when Scott told Berry that he wasn't going to be able to keep his corporal money but he had talked with Pat Johnson and he said he could go back to OCC and pick up where – you know, his position there.   And Berry didn't – Berry didn't want to go.   He looked at me and said, "No, I like days.   And Johns[t]on you know how that would be going back to OCC".

Doc. No. 51-4, p. 16.

This discussion occurred "probably two weeks after Berry got there."  *Id*.

Thus, according to Johnston, upon learning that Berry's pay would decrease because he had transferred, Smith reached out to arrange for Berry to return to his old job with his old rate of pay, but Berry was not interested in doing that.   This is not evidence of a scheme to lure or entice Berry to a job with a lower rank and lower rate of pay.

 Additionally, Defendants have produced evidence that, in January of 2018, a vacancy occurred for a night shift Corporal position at the Work Release Center, and that OPSO Captain Bryan Boney ("Boney") sent an email to all personnel soliciting applicants for the position.

[Doc. No. 51-8]. Berry did not express an interest in, nor did he apply for the position. [Doc. No. 51-3, p. 17]

Moreover, Berry indicates that he himself was mistaken in his belief that he could transfer to a job with a lower rank yet retain his rate of pay. He testified that he "just thought I would be able to retain my pay based on my years of service and based on the time frame that I've actually had the corporal's pay. . . .I just thought that I would be able to be at least a Spec 4 where I would retain my pay that's equal to a corporal's pay." [Doc. No. 51-3, p. 9, 10]. Thus, Berry's own testimony does not support his argument that he was lured or enticed into accepting a job with a lower rank and lower pay.

Finally, it is undisputed that it was Berry who approached Smith to ask for a job at the Work Release Center, of his own volition. [*Id.*, p. 7]

Berry must produce substantial evidence of pretext in order to survive a motion for summary judgment. *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 402–403 (5th Cir. 2001). A plaintiff's subjective belief that he was the victim of intentional discrimination is insufficient to create an inference of discriminatory intent. *Roberson v. Alltel Information Services*, 373 F.3d 647, 654 (5th Cir.2004).

The only evidence that Berry produces to support his argument that he was the victim of a plot whereby he was lured or enticed into accepting the transfer is his own unsupported speculation. Accordingly, the Court finds this argument has no merit.

        **ii.**     **White employees with similar or less experience were allowed to transfer and keep their rank and rate of pay, or were promoted and given a pay increase.**

As an additional means of showing pretext, Berry argues that, while white employees with similar or less experience were allowed to transfer and keep their rank and rate of pay, or

were promoted and given a pay increase, his rank was reduced and he suffered a pay reduction when he transferred.

To establish disparate treatment, a plaintiff must show the employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee*, 574 F.3d at 260. The first white employee identified by Berry as having received preferential treatment, Melissa Powe (sometimes referred to as Melissa "Powell" in the record) was actually allowed to transfer from a Corporal position at the OCC to a Corporal position at the Work Release because that was a Corporal spot and the lady she replaced was a Corporal [Johnston Deposition, Doc. No. 63-2, pp. 18, 19]. This was a lateral transfer to a designated Corporal slot and not evidence of preferential treatment.

The second employee was Steve Pitarro. The only evidence submitted by Berry relative to Pitarro is Defendants' response to an admission of fact that Pitarro transferred to work release and retained his same or more pay and rank. [Admission of Facts, Doc. No. 63-11]. At first glance it may seem Berry produced evidence of preferential treatment; however, Berry produces no evidence to show what Pitarro's rank was before or after the transfer or what position he sought at the Work Release Program.

Further, Berry's argument ignores the fact that it was Berry who solicited a transfer to the Work Release Center, and that when he applied for the next position that became open, he did so with full knowledge that it would involve a decrease in rank from Corporal to Deputy. Thus, it was not Defendants' decision for Berry to incur a reduction in rank, it was solely Berry's decision.

Furthermore, as indicated above, when it became known that Berry would suffer a reduction in pay in his new position, Smith took steps to enable Berry to return to his former

position, his former rank, and his former pay rate. Berry was not interested. Accordingly, Berry's argument has no merit.

In summary, the Court finds that Berry has not satisfied his burden of producing substantial evidence of pretext. Berry submits only his own subjective belief that he was discriminated against because of his race. Such beliefs, however, are not sufficient to carry his ultimate burden to prove unlawful discrimination. *See Dees v. United Rentals N. Am., Inc.,* 505 F. App'x 302, 306 (5th Cir. 2013) ("[Plaintiff's] subjective belief that [the Defendant] discriminated against him is clearly insufficient to demonstrate pretext."). Consequently, summary judgment and dismissal of Berry's race discrimination claim is warranted.

### 2. Retaliation Claim

The success of a retaliation claim can be separate and independent of the success of a discrimination claim and the success of one is not dependent on the other. Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007) (citing 42 U.S.C. § 2000e–3).

Berry claims that Defendants retaliated against him for filing his EEOC Complaint alleging discrimination on the basis of race by terminating his employment.

Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *McMillan v. Rust College*, *Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983) (holding that the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), applies to Title VII retaliation cases). Under this framework, the order and allocation of proof begins with Berry, who has the initial burden of establishing a *prima facie* case of retaliation. *Id*. To satisfy this burden, Berry must show that: (1)

he engaged in activity protected by Title VII; (2) he suffered an adverse employment action by Defendants; and, (3) a causal connection exists between the protected activity and the adverse employment action. *See Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489 (5th Cir. 2014). If Berry cannot support all three elements of a *prima facie* case of retaliation, then summary judgment for Defendants is appropriate. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

However, if Berry successfully establishes a *prima facie* case, the burden then shifts to Defendants to produce a legitimate, nonretaliatory reason for the adverse employment action. *Davis*, 480 F.3d at 490. Once Defendants make this showing, the burden shifts back to Berry to prove that Defendants' proffered reason is actually pretext for retaliation. *Davis*, 765 F.3d at 490.

An employee establishes pretext by proving that "but for" the protected activity, he would not have suffered the employment actions of which he complaints. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). While this final step may seem identical to the causal connection prong of the prima facie case, the burden required to prove causation at this stage is more stringent. Indeed, "[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

### a. *Prima facie* case of retaliation

### i. Protected activity

There is no dispute that Berry engaged in activity protected by Title VII by filing a charge of discrimination based on race against Defendants Sheriff Russell and Smith with the U.S. Equal Employment Opportunity Commission (EEOC) on November 24, 2017.

Therefore, this element of a *prima facie* case has been satisfied.

### ii.    Adverse employment action

It is well-settled in the Fifth Circuit Court of Appeal that termination, whatever the reason, is an adverse employment action. "Termination is a classic example of adverse employment action under our caselaw". *Hassen v. Ruston Louisiana Hosp. Co., L.L.C.*, 932 F.3d 353, 358 (2019); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 700 (5th Cir. 2014); *Zenor v. El Paso Healthcare Sys., Ltd.,*176 F.3d 847, 855 (5thCir. 1999).

There is no dispute that Berry's employment with the Sheriff's office was terminated on March 28, 2018.  Therefore, this element of a *prima facie* case has also been satisfied.

### iii.    Causal connection

A "causal link" for a *prima facie* showing is established if evidence shows that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir.2001).

Berry has submitted evidence that the OPSO administration and Sheriff Russell were on notice of Berry's EEOC complaint by late January or early February 2018 and had assigned Colonel Purvis as the representative handling the EEOC complaint.  [Doc. No. 47-7]. Although Defendants assert there is no evidence to suggest that Sheriff Russell or Colonel Purvis had knowledge of Plaintiff's EEOC complaint or that it served as a basis for Berry's termination, Defendants do not otherwise argue against this element of a *prima facie* case, and instead focus on the next inquiry. [Doc. No. 51-1, p. 9].

The Court therefore finds that this element of a *prima facie* case has been satisfied.

Having found that Berry has established all the elements of a *prima facie* case, the Court will next consider whether Defendants can produce a legitimate, nonretaliatory reason for the adverse employment action, and if so, whether Berry can establish pretext.

### b. Legitimate, nonretaliatory reason, and pretext

As indicated above, once Berry successfully establishes a *prima facie* case, the burden then shifts to Defendants to produce a legitimate, nonretaliatory reason for the adverse employment action. *Davis*, 480 F.3d at 490. Once Defendants make this showing, the burden shifts back to Berry to prove that Defendant's proffered reason is actually pretext for retaliation. *Davis*, 765 F.3d at 490.

Defendants contend that they had a legitimate, non-discriminatory reason for terminating Berry's employment because it is undisputed that Berry ran for and was elected to public office without notifying anyone in his chain of command, and, further, he did not get Sheriff Russell's permission to seek that office, all of which is in violation of the Ouachita Parish Sheriff's Office Manual of Rules.

In support of this contention, Defendants assert that Berry admits that, as an employee of the Sheriff, he was charged with knowing the policies and procedures of the Sheriff's Office. [Berry Deposition, Doc. No. 51-3, at p. 12-16; see also Page E-6 of the Ouachita Parish Sheriff's Office Manual of Rules, attached as Doc. No. 51-9] The "manual is provided as a guide; all conditions, circumstances, rules, regulations, polices and official procedures cannot be completely covered." [Page E-7 of the Ouachita Parish Sheriff's Office Manual of Rules, Doc. No. 51-10].

Per policy, "[p]olitical activity by members and employees shall be restricted to voting and activities affecting working conditions of members and employees. Members and employees

shall not solicit or make contributions in money or other things directly or indirectly on any pretext to any person, committee, or association for political purposes not directly affecting working conditions of members and employees." [Page E-18 of the Ouachita Parish Sheriff's Office Manual of Rules, Doc. No. 51-11].

Further, "members and employees shall not enter into any outside employment without having first submitted a written summary of proposed duties, location of proposed employment, and employer to the Sheriff through proper command channels." [Page E-19of the Ouachita Parish Sheriff's Office Manual of Rules, Doc. No. 51-12]. "Any policies, procedures, and other items contained [in the Manual] are subject to the discretion of the Sheriff." [Pages E-1-2 of the Ouachita Parish Sheriff's Office Manual of Rules, Doc. No. 51-13].

Defendants assert that it is uncontested that Berry qualified to run for the political office of Councilman in the Town of Winnsboro in January or February of 2018 [Berry Deposition, Doc. No. 51-3, p. 21] and that he was elected in March 2018. [*Id*. at pp. 5-6]. It is further uncontested, and Berry admits, that he did not inform the Sheriff that he was running, nor did he seek permission or leave of office to do so. [*Id*. at p. 22].  It is uncontested that Berry continued working for and being paid by the Sheriff the entire time that he ran for office. [*Id*. at p. 22]. It is uncontested that, after Berry was elected as Councilman, he did not approach the Sheriff to inform the Sheriff of his election. [*Id*. at pp. 22, 23].

Defendants further assert that Berry never told anyone in his chain of command of his running for or election to political office. [*Id*. at p. 24]. Berry testified in his deposition that he wasn't sure when he planned on telling the Sheriff about having been elected. [*Id*. at p. 27]. Berry testified that he thought he could keep his job as a Deputy and be a Councilman. [*Id*. at p.

25]. Berry admits that he does not know of a single person of any race that ran for an elective office and never informed the Sheriff. [*Id.* at p. 33].

Defendants conclude that since Berry admits he violated the foregoing policies, Defendants had cause to terminate his employment.

The Court finds that Defendants have articulated a legitimate, non-discriminatory reason for the termination of Berry's employment. Therefore, the burden now shifts back to Berry to prove that Defendants' proffered reason is actually pretext for retaliation. *Davis*, 765 F.3d at 490.

"A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d374, 378-79 (5ᵗʰ Cir. 2010). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5ᵗʰ Cir. 2003).

Berry contends that Defendants have been inconsistent in articulating the reason for his termination, and, that this inconsistency shows pretext.  An employer's inconsistent explanations for an employment decision "cast doubt" on the truthfulness of those explanations. *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002); *see also Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007) ("[A]n employer's inconsistent explanations for its employment decisions at different times permit[ ] a jury to infer that the employer's proffered reasons are pretextual.").

Berry contends that, originally, the reason tendered by Defendants for his termination was that he violated Louisiana's Dual Office Holding and Dual Employment Law (LA. REV. STAT. 42:61 *et seq*.)

 Louisiana Revised Statute 42:63(D) states in part:

No person holding an elective office in a political subdivision of this state shall at the same time hold another elective office or full-time appointive office in the government of this state or in the government of a political subdivision thereof. No such person shall hold at the same time employment in the government of this state, or in the same political subdivision in which he holds an elective office. In addition, no sheriff, assessor, or clerk of court shall hold any office or employment under a parish governing authority or school board, or shall any member of any parish governing authority or school board hold any office or employment with any sheriff, assessor, or clerk of court.

Berry asserts that Sheriff Russell's stated reason for terminating him was for holding dual offices. [Russell Deposition, Doc. No. 47-17, p. 4]. Colonel Purvis, who was assigned to handle Berry's EEOC complaint, testified that Berry was terminated because it would be a violation of law for Berry to be employed at both places. [Purvis Deposition, Doc. No. 47-15, p. 7]. Chief Mashaw testified that the reason for terminating Berry was for violation of dual employment law. [Mashaw Deposition, Doc. No. 47-14, pp. 4, 5]. Captain Boney testified that he understood Berry was terminated because it was illegal for Berry to hold that office and also be deputy sheriff. [Boney Deposition, Doc. No. 47-11, p. 9]. Berry testified that Colonel Purvis advised him he was terminated because of violation of the Louisiana Dual Officeholding Statute. [Berry Affidavit, Doc. No. 64-1, ¶ 7]. The separation notice provided by Defendants to the Louisiana Workforce Commission also states the reason for Berry's termination was for "Violation of Louisiana Law."

Berry argues that Defendants have now abandoned that stated reason, and, instead, argue that he was terminated for violating provisions of the Office Manual.

The reason Defendants abandoned that argument, according to Berry, is that he was elected to the Winnsboro City Council seat March 24, 2018; he was not sworn-in and holding that office until June 29, 2018; yet Defendants terminated him on March 28, 2019. In his Motion

for Summary Judgment, Berry cites case law as well as opinions from the Louisiana Attorney General's Office that establish that a violation of dual officeholding statute occurs only when both offices are held *simultaneously. C.f., Braddock v. Kostelka,* 568 So.2d 248, 252 (La. App. 2 Cir., 1990). Berry asserts that Defendants were "haste [sic] and exercised purposeful bad faith in their decision to get rid of Golden Berry for filing the EEOC charge of discrimination." [Doc No. 47-2, p. 10]

Berry concludes that Defendants' inconsistent explanations for the employment decisions at different times show the proffered reasons are pretextual

With regard to Defendants' contention that he was terminated for failure to abide by the Office Manual, Berry argues that failure to follow the Office Manual has never been an issue with the numerous, previous employees who ran for office; and, according to Berry, it would not have been an issue for him had he not filed the EEOC complaint of racial discrimination.

As an example, he argues former OPSO employee/deputy Gary Gilley ("Gilley") placed his name in the bid for Richland Parish Sheriff, won the election, and was allowed to remain employed at OPSO until his swearing-in. [Russell Deposition, Doc. No. 47-17, p. 8; Mashaw Deposition, Doc. No. 47-14, p. 7].

The Court finds that, contrary to Berry's assertion, the Defendants have consistently contended that a reason for his termination was that Berry did not abide by the Office Manual. Moreover, the deposition summary judgment evidence indicates that Berry was aware of that contention because he tried to elicit testimony to show that reason was pretext, by seeking evidence that he was terminated for running for a political office, whereas other employees were not. However, the evidence does not support Berry's pretext argument.

Colonel Purvis testified that the other employees who ran for office told the sheriff up front they wanted to run and were granted leaves of absence. [Doc. No. 51-7, p. 26]. Colonel Purvis further testified that he believes that if Berry had done like everyone else and told the sheriff he wanted to take a leave of absence to run for office, the sheriff would have allowed him to do so. [Id, at p. 27].

Sheriff Russell testified that when Gilley qualified to run, he took a leave of absence, and after he won, he was allowed to come back and take a load of caseload of investigations until he was sworn in. [Doc. No. 47-17, p. 8].

Chief Mashaw likewise testified that on the day he qualified, Gilley took a leave of absence to run for sheriff in Richland Parish. [Doc. No. 47-17, p. 7].

Berry, on the other hand, as indicated above, admitted that he did not inform the Sheriff that he was running, he did not seek permission or leave of office to run, he continued working for and being paid by the Sheriff the entire time that he ran for office, and after he was elected, he did not approach the Sheriff to inform the Sheriff of his election.

Furthermore, Berry never told anyone in his chain of command of his running for or election to political office, he wasn't sure when he planned on telling the Sheriff about having been elected, he thought he could keep his job as a Deputy and be a Councilman.

Berry also admits that he does not know of a single employee of any race that ran for an elective office and never informed the Sheriff. [Doc. No. 51-3, p. 33].

The Court finds that Berry has not carried his burden of proving "but for" the protected activity, he would not have suffered the employment actions of which he complaints. Consequently, Berry cannot sustain a retaliation claim.

## III.     CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [Doc. No. 47] filed by

Berry is DENIED and the Motion for Summary Judgment [Doc. No. 51] filed by Defendants is

GRANTED.  All of Berry's claims are DISMISSED WITH PREJUDICE.  All pending motions

are DENIED AS MOOT.

**Monroe, Louisiana,** this 3rd day of April, 2020.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**